Our first case is Centripetal Networks v. Keysight Technologies, et al., 2024-23-72 and 73. Mr. Richardson. Good morning. Your Honor, and may it please the Court. Centripetal's invention protects a large computer network that receives data through many different gateways. That invention ensures that the same rules are applied to every packet that reaches the network and that rules are automatically created to address new cybersecurity threats. Counsel, when I look at your brief, it doesn't look like you're arguing obviousness. All of your points are that law doesn't disclose this. It doesn't disclose that. These are all fact questions subject to a high standard of review. I did two responses, Judge Lurie. I agree with you that our challenge is to laws disclosures. We think that is the basis for the Board's decision. There are no motivation to modify findings in this opinion. So under this Court's decision in Arendi and in real-time data, the Board had to rest on laws express disclosures. So we agree this is about laws disclosures. But I think the simplest issue here is the meaning of Network 150. I might even say there's no question of law. I agree there is a fact finding, Judge Lurie, around the meaning of Network 150. But if you look at the other side's expert testimony on that issue, it is a single sentence at Appendix 2174 which says because Network 150 appears in law, it refers to a single network that joins together two subnetworks. Before you keep going, can I just ask you a housekeeping question? Is Claim 1 representative for all the claims here? For all the claims at issue on appeal, yes, Your Honor. Yes. So to continue on the meaning of Network 150, there are multiple reasons in law to conclude that there are two separate networks, 150A and 150B. First, that's how law describes them. Law uses the plural networks when talking about both A and B and the singular when it says A or B. There's also the fact that law positions each network in a separate subsystem. So 150A appears in 105A, 150B appears in 105B, and then there's law's definition of a perimeter device. Law says that a perimeter device is a device that sits outside of A or B. So you mentioned the subsystems, 150A and 150B. Why wouldn't it be that there'd be substantial evidence support for 150 being considered the entire network? I think because there's only one sentence of expert testimony on that, that's at 2174, and I think there's two obvious problems with that testimony. The first is that on the board's finding, figure three is joining together two subnetworks, 150A and 150B, into a single network, 150. But the first problem is law never uses the term subnetwork at all. That is a critical feature of the board's finding. It does not appear in the prior art reference, even though law says subsystem when talking about components of a system. So I think that's- It doesn't need to use the term subnetwork to render the challenge claims obvious, right? I think it would, given the many indications in the prior art that there are two separate networks. And this is really important. This is fundamental to the difference between the 266 patent and the law reference. The 266 patent is all about protecting a single large network that has multiple gateways to either the internet or to other networks. The law reference is about process control systems that have many different networks inside of them, each with their own security requirements. And that's what law is showing you in figure three. You have two separate networks, 150A and 150B. They are positioned inside different subsystems and they have their own firewalls that provide rules to protect the devices in each network. So the only basis for finding otherwise is that single sentence about the meaning of network 150. But network 150 doesn't appear in figure three. If you look at figure three, you see two discrete networks, each with their own connection to the internet and each with a connection to each other. I'd like to also just address the common rules limitation because even if you accepted that network 150 was a single network, you would still have the problem that there are different rules being applied at the two firewalls. And a core feature of the law reference is that rules are tailored to the specific devices that they protect. So that means that the rules that apply at 146A will protect different devices and have different rules than the rules that apply at 146B. So even if you accepted that conclusory testimony about network 150, you would still have a separate problem where the rules that are applied at the two gateways would be different from one another. And the board never really engaged with that. Instead, what the board said is you can ignore all of that evidence because in paragraph 51 of law, there is a single reference to global rule sets. Counsel, I'm looking at your patent with a long list of patents cited. And of course, the duty of disclosure requires one to cite references which an examiner might reasonably consider pertinent to the invention. There are hundreds here. What does that say about obviousness if all of these are reasonably pertinent to patentability? I think what that says is that there's a lot of references that speak to computer network security, but the only issue before the court is whether the single law reference discloses each limitation of the claims. Keysight was free to make other arguments about other references. The board was free to make motivation to modify findings. It did not do that. The only basis for the board decision is law's disclosures. So if this court finds that law does not disclose a single network, that it doesn't disclose applying the same rules to that network, then you'd have to reverse because that's not the basis for the board's decision. Would it be a reverse or would it be a vacate and remand? I think it would be a reverse because the board did not bracket any issues like it often does when it's considering alternative arguments. Often what the board will do is say, I'm deciding on this ground. Other grounds have been presented that I'm not reaching. You don't have that here. So I think the opinion is fairly read to say the evidence that the board accepted are about law's disclosures. And if those are wrong, you have to reverse. I take it Keysight thinks they have other arguments that the board was silent on that are addressed in footnote three of their brief. If there are no questions on the common rules limitation, I would like to just turn to the automatic generation limitation. This is the final argument in our brief. First, in terms of issue preclusion, I think this is a case where the incentive to litigate exception clearly applies. You have a patent owner that had two IPRs. In one of those IPRs, every claim was invalidated. In the other IPR, some of the claims survived. So the patent owner took the first appeal, didn't take the second appeal. That's the IPR that we're going to hear next, is it right? Yes, Your Honor. And that's the exact same fact pattern as Orrin Technologies, where this court held that issue preclusion didn't apply. It also makes this case very different from Pabst, where the patent owner took both appeals all the way to the brink of argument and then filed briefs. We did not do that here. In the 474 patent, we dropped our appeal before any briefs had been filed. Is it significant to the issue preclusion question that some of your claims as of now have survived the second IPR, the one we're going to hear next? Yes, it is, Your Honor. I think that that's what reduces or eliminates your incentive to appeal in that second case. Is that right? Yes, that's what this court explained in Orrin Technologies, also in power integrations, that when you have some claims that survive and therefore a different incentive in the two appeals, it makes good business reasons to pursue one appeal but not the other. And I think this court should also think about the implications of a contrary rule. If the court were to hold that issue preclusion applied here, you'd have a situation where parties have to pursue duplicative briefing in this court solely to preserve an appeal that's already before the court. I don't think that's a good use of the court's resources. So just briefly on the merits of the automatic generation limitation, what these claims require simply is external rule updates that occur automatically. Law does not have that. Law's big contribution in this area is that you can develop rules within a system at what law calls operator workstations, and you can- Counselor, are you only challenging the automatic part for the law reference, as opposed to you point out automatic generation by a server is only the automatic part that really is the challenge here? Yes, Your Honor. But just to clarify, automatic when it's performed externally. For instance, paragraph 83 of law talks about updates within the system. We think that's irrelevant to the claim language, which is about external sources of rule updates. So if you look beyond paragraph 83, you will not see any reference to automatic rule updates in law. And that's because at the time of law, rule updates by external services were always performed by IT personnel. And Keysight's expert agreed with that. This is at Appendix 2061, where he said that IT personnel would be required to perform rule updates from an external source. If there are no questions, then- Further, we'll save your rebuttal time. Thank you. Mr. Dietrichs. Good morning, Your Honors. May it please the court. Jonathan Dietrichs for Keysight Technologies. This appeal presents a straightforward case for affirmance based on the substantial evidence supporting the board's factual determinations. Here, centripetal disputes lost disclosure of three claim limitations, the first relating to whether lost firewalls can protect a single network, the second relating to whether lost firewalls can apply a common set of filtering rules, and the third relating to whether law discloses automatic generation of rules by a server. Why did Keysight assert obviousness rather than anticipation? Well, Your Honor, we believe law both discloses, explicitly discloses, all of the claims, including the claims at issue here. But as a fallback argument, to the extent that any of these limitations were found not to be explicitly disclosed, at a minimum, there would be an incredibly strong case for obviousness. And so that's why we included both arguments. Is it true, though, that as the case comes to us, we only have to be concerned with the law's express disclosures and not what it may have also rendered obvious? That's correct, Your Honor. And here, there is more than enough evidence in the record to show that a reasonable fact finder could accept the board's findings. In fact, each dispute basically boils down to centripetal's complaint that the board declined to adopt the strained interpretation of law. It's disclosure offered by X expert finding the interpretation by Keysight's expert more credible. I'll start with the dispute over whether the network protected by laws firewalls 146A and 146B can properly be regarded as a single network. As the board correctly found, laws figure 3 embodiment shows lands 150A and 150B joined through network access device 149C into a single protected network with perimeter firewalls 146A and 146B collectively, providing the entire interface between that protected network and the internet. As Keysight's expert Dr. Jacobson explained, this is evident from figure 3 itself. The last text provides ample supporting disclosure. Specifically, paragraph 51 of law describes that network access device 149C joins lands 150A and 150B, which are part of subsystems 105A and 105B respectively, into a single network by providing a direct cross system connection between the two subsystems without implementing a rule set. So counsel, what is the best disclosure in law of it being a single network? I feel like that's where you were headed when you started pointing to various paragraphs of law. But what do you consider to be the best disclosure in law of it being a single network? Well, I would direct your honor to figure 3 and the paragraphs cited in the petition, namely paragraph 51, which I just mentioned of providing the direct connection between the two subsystems to join the networks together, as well as paragraph 55 of law, which refers to the joined subsystems as a network 150. And finally, law explicitly states as much in paragraph 53, which states, quote, to process control subsystems 105A and 105B communicating over a land, end quote. Again, referring to the network that provides communications throughout the two subsystems as a singular network. Likewise, law's paragraph 53 also states that one or more subsystems 105A, 105B, and one or more process control networks, 150A and 150B, are communicatedly connected over, quote, a process control network, end quote. To be clear, that's referring to the two halves, the two subsystems communicating over a singular network. It's hard to be more explicit than that. What is your response to opposing counsel's distinction between subsystem and subnetwork? It's a distinction without a difference, Your Honor. Subnetwork, it's true that law does not specifically use the term subnetwork. But based on the description, the subnetworks 150A and 150B are located within subsystems 105A and 150B, which is explicitly shown in figure three. You said 105, you meant 150A and 150B? The LANs are 150A and 150B. The subsystems are 105A and 150B. But regardless, it's all shown connected in figure three, which Dr. Jacobson explained, showed. I'm sorry. I hate to be such a stickler. But do you mean 105A and 105B? On the subsystems. OK, well, sometimes you're saying 105, and you're appearing it with 150. I'm just trying to be precise. Yes, Your Honor. You just restated for my benefit what you mean when you're referring to it. Because sometimes you were saying 105 plus 150. I just want to make sure that the record's clean. Yes. So network access device 149C provides a cross-system connection joining both subsystem 105A, LAN 150A, and subsystem 105B, and LAN 150B. It's all directly joined together, no rules set, all together into one network, exactly as law disposes. And you're saying that's all shown in figure three, and Dr. Jacobson said that, and the board credited that. That's correct, Your Honor. I'll now turn to the limitation that requires applying a common set of filtering rules to all traffic traversing the network boundary. Substantial evidence supports the board's determination that laws firewalls 146A and 146B each apply common rule set 147. Paragraph 88 of law describes the rules that the firm 305 sends to both firewalls 146A and 146B as rule set 147. Likewise, paragraph 51 of law states that where the device is a perimeter device, such as perimeter firewalls 146A and 146B, quote, the rule sets 147 and 151 may include a global set of rules for access to any device within the subsystems 105A, 105B, end quote. Counsel, do you agree that the board did not perform a motivation to combine analysis here? Um, I would agree there was no reason to perform a motive. There's no, um, well, there's other grounds that the petition raised that combined with other references, the board reached its decision on law alone. Those aren't at issue in this appeal. If this court were to find any deficiency, there would need to be a recommend to consider the obviousness grounds in view of law alone, as well as in view of the other references. But on this specific limitation, it's disclosed by law alone. And so we see that in paragraph 51 that references the global set of rules for any device in both subsystems. Remember, that's both the left side, 105A, and the right side, 105B, referenced here in paragraph 51 of law. And it's stating that the firewalls, both 146A and 146B at the perimeter, apply that rule set 147 to all traffic crossing the boundary. Dr. Jacobson confirmed this based on last paragraphs 88 and 51. That person of ordinary skill would have understood from this disclosure that firewalls 146 and 146B, A and B, apply the common rule set 147, which may be the same rule set to all network traversing there through. The board credited this testimony, as well as the relevant disclosures of law, as the most reasonable interpretation of law's disclosures, and substantial evidence supports that finding. Third and finally, the board's factual findings regarding the automatic generation by a server limitation are supported by substantial evidence. Centribetal has not disputed the board's finding that law's third-party cybersecurity risk management firm 305 comprises a server. Turning to paragraph 88 of law, that paragraph explains that firm 305 may collect threat data to construct rule set 147, and that such rule set constructing, quote, may be performed using any type of information technology methods suitable for performing such actions using electronic data, end quote, including collecting the threat data from the web using various data collection techniques, such as robots or crawling, and then, quote, executing a computer implemented algorithm, end quote. As Dr. Jacobson explained, a person of ordinary skill reading this disclosure would have understood that using any type of information technology methods suitable for rule set constructing would have included computer implemented methods of automatically constructing rules. This is especially true given law's explicit recognition that methods of automatically constructing rules were known in the prior art. That's a paragraph 21 of law, which recognized prior art techniques for creating firewall rules by, quote, automatically locating devices and generating rules by passively analyzing traffic on the network, end quote. The generation of rules is done through computer implemented methods and human involvement as well. Does that satisfy this limitation? So Centripetal's argument is that humans need to be involved. There's no evidence in the record that humans need to be involved in the creation of every rule set by Firm 305. And in fact, Dr. Goodrich, Centripetal's expert, testified that the limitation would be met if any rule in the rule was constructed without human involvement. As long as one rule was. Correct. And given law's disclosure and Dr. Jacobson's testimony, that's certainly the case here under these facts and law's disclosure. The board agreed with Dr. Jacobson's analysis of law's disclosure, incorporating its institutional decision analysis that expressly relied on Dr. Jacobson's testimony with respect to the relevant disclosures of law. That's Appendix 30 and Appendix 18, 24, and 25. Briefly turning to Centripetal's counter-arguments, they lack merit. As I just explained, nothing. Counsel, do we need to reach the issue preclusion argument if we determine that substantial evidence supports? Absolutely not. That's why I've led with substantial evidence. But just to address that real quick, Your Honor, although the board's decision on the automatic generation by server limitation is grounded in substantial evidence, issue preclusion does provide an alternate basis for affirmance under this court's decision in PEP's licensing, as the issue is identical to that litigated with respect to the 474 patent, which became final after Centripetal voluntarily dismissed its appeal of that decision. Of course, Centripetal cites to this court's decision in Orrin Tech's to assert the issue of preclusion shouldn't apply because it lacked incentives. But that case involved a very different fact pattern in which the patent owner lacked any incentive to litigate a decision on a patent after a stipulated judgment of non-infringement that foreclosed an award of damages or an injunction. And of course, here, Keysight still has its cross-appeal of the board's patentability findings of the five claims that survived the 474, thereby providing the incentive to continue to litigate that. So very different facts here than in Orrin Tech. The court, if the panel has any further questions for me, I'd be happy to answer them. Otherwise, I'll see you at the remainder of my time. Thank you, counsel. Mr. Richardson has some rebuttal time. Thank you, Your Honor. I'd like to start with Judge Cunningham's question about the connection between the subsystems and the networks. I think it's very important. What law is disclosing is one process control system with two subsystems, 105A and 105B. They each have their own network, 150A and 150B. Law never refers to a subnetwork. And that's not a technicality. It's a very important point. Because the 266 patent is all about protecting networks with connections to other networks, not just the internet. So if the prior art is showing two separate networks that have data moving between them that is not protected, that is not what the 266 patent is addressing. And that goes to the core of the invention and its difference from law. What law is showing you is a single system with multiple networks that each have their own security requirements. I want to address briefly some of the evidence my friend cited on the entire boundary limitation. I think we agree at this point that it all comes down to that single sentence on 2174. That's the sentence where Dr. Jacobson stated his reading of network 150. But if you look at the evidence my friend discussed, including figure 3 in paragraph 51, paragraph 51 defines a perimeter device as a device that sits outside of network A or B. It is discussing them as two separate networks. And it's saying a perimeter device is any device that's not in A or B. That is a clear textual signal that there are two separate networks in this case. And I think their argument is basically, if network 150 doesn't mean a single network, what does it mean? And I think it's clear from law that what network 150 is doing is it is describing features that apply to any network. So my friend cited paragraph 55. What paragraph 55 says is network 150 may be ethernet communications. That is a statement that could apply to 150A, 150B, or anything else. And that's not unusual. Law uses rule set 147 when it's describing features that apply to any rule set. It uses firewall 146 when describing features that apply to any firewall. And we all agree that even though law uses firewall 146, there is not a single firewall in law. There are multiple firewalls. We think the same logic applies to network 150. Just briefly on some of these issue preclusion questions that came up, what I take my friend to be arguing is that so long as the party that challenged a patent in an IPR decides to appeal, the patent owner has to appeal, even if they prevailed on some claims to avoid issue preclusion. I don't think that rule makes any sense. I think what Orin Technologies and Power Integration say is when there's a meaningful difference in the incentive to litigate, that issue preclusion does not apply. You have that here because five of the claims of the 474 patent survived the IPR. Oh, just to your question, Judge Stark, on the automatic generation limitation. We agree that if any single rule is created automatically, that is sufficient to meet the claim language. The problem here is that there's no disclosure in law of any way to automatically generate even a single rule at an external service. All Keysight's relying on is paragraph 88 for that point, but all paragraph 88 says is use any IT method. That just begs the question of what methods are available in law, and automatic rule generation is not one of those options. Thank you. Thank you. Both counsel, the case is submitted.